UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID SWICKHEIMER | ) | CASE NO. |
| 5028 Nelson Dr. | ) | |
| Southbloomfield, Ohio 43103 | ) | JUDGE |
| | ) | |
| *On behalf of himself and all others* | ) | **PLAINTIFF'S CLASS AND** |
| *similarly situated,* | ) | **COLLECTIVE ACTION** |
| | ) | **COMPLAINT** |
| Plaintiff, | ) | |
| | ) | (Jury Demand Endorse Herein) |
| *v.* | ) | |
| | ) | |
| BEST COURIER, INC. | ) | |
| c/o Statutory Agent David A. Grogg | ) | |
| 6855 Greenleaf Dr. | ) | |
| Reynoldsburg, OH 43068 | ) | |
| | ) | |
| *and* | ) | |
| | ) | |
| JOE ECKART | ) | |
| 1200 Technology Drive | ) | |
| Columbus, OH 43230 | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff David Swickheimer, by and through counsel, for his Class and Collective Action

Complaint against Defendants Best Courier, Inc. and Joe Eckart (hereinafter collectively referred

to as "Defendants" or "Best Courier"), states and alleges the following:

**INTRODUCTION**

1.     Plaintiff brings this case to challenge the policies and practices of Defendants

Best Courier, Inc. and Joe Eckart that violate the Fair Labor Standards Act ("FLSA"), 29 U.S.C.

§§ 201-219, as well as the Constitution and statutes of the State of Ohio. Plaintiff brings this case

as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b), which provides that "[a]n action

to recover the liability" prescribed by the FLSA "may be maintained against any employer … by

any one or more employees for and in behalf of himself or themselves and other employees similarly situated" (the "FLSA Collective"). Plaintiff also brings this case as a class action under Fed. R. Civ. P. 23 on behalf of himself and other members of a class of persons who assert factually-related claims under the Constitution of the State of Ohio, Ohio Const. Art. II, Sec. 34a, and Ohio's wage-and-hour statutes, O.R.C. Chapter 4111 (the "Ohio Class").

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

3.      This Court has supplemental jurisdiction over Plaintiff's claims under the Constitution and statutes of the State of Ohio because those claims are so related to the FLSA claims as to form part of the same case or controversy.

4.      Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391(b) because one or more Defendant resides in this district and division and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred here.

## PARTIES

5.      At all times relevant, Plaintiff David Swickheimer was a citizen of the United States and a resident of Pickaway County, Ohio.

6.      Defendant Best Courier, Inc. is an Ohio for-profit corporation [1] with its principal place of business in Franklin County, Ohio. [2] According to records maintained by the Ohio Secretary of State, Defendant Best Courier, Inc.'s statutory agent for service of process is David A. Grogg, 6855 Greenleaf Dr., Reynoldsburg, OH 43068.

---

[1] https://businesssearch.sos.state.oh.us/?=businessDetails/685760 (accessed Aug. 21, 2019).
[2] http://best-courier.com (accessed Aug. 21, 2019).

7.      Defendant Joe Eckart is, upon information and belief, a citizen of the United States and a resident of Franklin County, Ohio. Upon information and belief, Defendant Joe Eckart is an owner, [3] CEO and President of Defendant Best Courier, Inc.

## FACTUAL ALLEGATIONS

### Defendants' Business

8.      Defendant Best Courier is engaged in the business of delivering packages and materials for immediate service, medical, inter-company, and mail service clients. [4] Best Courier has engaged in that business for more than thirty years. [5] Defendants operate out of 1200 Technology Drive Columbus, OH 43230.

9.      Best Courier utilizes delivery drivers (hereinafter "drivers") to make these deliveries.

### Defendants' Statuses as Employers

10.      At all times relevant, Defendants were employers within the meaning of the FLSA, 29 U.S.C. § 203(d), Ohio Const. Art. II, Sec. 34a and O.R.C. Chapter 4111, and employed non-exempt hourly employees, including Plaintiff.

11.      At all times relevant, Defendants were an enterprise within the meaning of 29 U.S.C. § 203(r).

12.      Defendant Joe Eckart is an employer pursuant to 29 U.S.C. § 203(d) in that he is a "person [who] act[ed] directly or indirectly in the interest of an employer," Defendant Best Courier, Inc., "in relation to employees," including Plaintiff and other members of the FLSA Collective and Ohio Class. Defendant Joe Eckart is also an employer pursuant to Ohio Const.

---

[3] *See* http://best-courier.com/about-us/ (accessed Aug. 21, 2019).
[4] *See* http://best-courier.com/services/ (accessed Aug. 21, 2019).
[5] http://best-courier.com/about-us/ (accessed Aug. 21, 2019).

Art. II, Sec. 34a and O.R.C. Chapter 4111, and had operational control over significant aspects of Best Courier's day-to-day functions, including the compensation of employees.

13.     At all times relevant, Defendants were an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1).

14.     Defendants operate and control an enterprise engaged in commerce, with annual gross volume of business exceeding $500,000.00.

15.     Defendants were each employers of Plaintiff and other members of the FLSA Collective and Ohio Class as each Defendant exercised the power to hire or fire drivers; supervised and controlled the drivers' work schedules or conditions of employment; determined drivers' rates and methods of payment; and maintained or were required to maintain records, including employment records.

### Plaintiff's, the FLSA Collective's, and Ohio Class's Non-Exempt Employment Statuses with Defendants

16.     Plaintiff David Swickheimer was employed by Defendants from approximately May 2018 to August 2019 as a driver. Plaintiff Swickheimer typically worked 50 or more hours per workweek for Defendants as a driver.

17.     At all times relevant, Plaintiff and other members of the FLSA Collective and Ohio Class were employees within the meaning of 29 U.S.C. § 203(e), Ohio Const. Art. II, Sec. 34a and O.R.C. §§ 4111.01, *et seq*.

18.     At all times relevant, Plaintiff and other members of the FLSA Collective and Ohio Class were employees engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 207.

**Best Courier's Misclassification of Drivers**
**as Independent Contractors**

19.     Best Courier, in violation of the FLSA and Ohio law, classifies its drivers as so-called "independent contractors." Through this misclassification, Defendants knowingly, willfully, and deliberately fail to compensate Plaintiff and other members of the FLSA Collective and Ohio Class minimum wage and overtime compensation at at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

20.     In fact, Plaintiff and Defendants' other drivers are employees of Defendants according to the standards applicable under the FLSA and Ohio law and are entitled to minimum wage and overtime compensation.

21.     Defendants have a high degree of control over the manner in which drivers perform their job duties.

22.     Drivers do not exert control over any meaningful part of Defendants' business operations and do not stand as a separate economic entity from Defendants. Defendants exercise control over all aspects of the employment relationship with drivers.

23.     Defendants control the work their drivers perform, the hours and schedule during which they perform that work and the manner in which they perform their driving duties. Defendants further determine the response time during which drivers are required to perform their work. Best Courier penalizes drivers if they fail to adhere to strict rules and requirements. For example, Best Courier's "Paperwork Policy" states:  "All Best delivery tickets must be turned in to the Best office or dropped off at the Best lockbox by Tuesday 8am of the week following the work. Failure to do so could result in a fine." Best Courier's "Termination of Contract" policy also provides: "Couriers will not be paid for work completed if the delivery tickets are not returned to the Best Office in the agreed upon time (Tuesday 8am). Best Courier's

"Completed Paperwork Procedures" states: "There [sic] a fine for paperwork that is not in the Gahanna office by 8am Wednesday: $10.00 for first occurrence, $20.00 for second and $50.00 for third." Likewise, Best Courier's "Time Off Policy" provides: "Contractors who are 'No Call/No Show' will have their contracts cancelled immediately."

24.     Drivers' opportunities for profit or loss are established unilaterally by Defendants; any opportunities drivers have to earn remuneration are unilaterally determined and controlled by Defendants. Best Courier requires drivers to sign and agree to standardized "Independent Contractor Agreement[s]" ("IC Agreement"). The IC Agreement provides, in relevant part:

> BEST agrees to pay Courier 55% (in a car, other rates apply to full size cargo vans) of the Gross Delivery Fee paid by the customer to BEST or received by BEST, or any other fee which BEST and Courier may subsequently agree upon and commit to in writing. BEST will pay commission weekly, on each Friday, for the work that was done the week prior. No commission will be paid to Courier for deliveries that are not completed due to the negligence of Courier, or which results in the dissatisfaction of the customer.

25.     Drivers do not have an opportunity for greater profits based on their management and/or technical skills. Moreover, drivers cannot modify their fee amount in order to maximize their profit. Drivers cannot renegotiate compensation throughout the employment relationship with Best Courier or Best Courier's delivery customers.

26.     Defendants require Plaintiff and other members of the FLSA Collective and Ohio Class to perform driving duties under the pricing guidelines, policies, procedures, and promotions set exclusively by Defendants. Drivers are not permitted to negotiate prices with Best Courier or Best Courier's customers. Drivers are not permitted to charge different prices based on other factors, such as their work experience, demand, or availability outside Best Courier.

27.     Likewise, Best Courier unilaterally determines the amounts its drivers are paid and unilaterally changes that amount from time to time.

28.    As a matter of economic reality, Defendants' drivers are economically dependent on Defendants.

29.    Drivers work for Defendants and are not in business for themselves.

30.    Defendants' capital investments and expenditures substantially outweigh any expenditures required on the part of Plaintiff and other members of the FLSA Collective and Ohio Class.

31.    Defendants' drivers perform work that is integral to Defendants' primary, regular business of the operation of Best Courier. Defendants are in the business of providing delivery services to Best Courier's clients. Best Courier's "primary purpose" is in fact to provide delivery services to clients.

32.    Defendants have knowledge of hours worked and duties performed by Plaintiff and other members of the FLSA Collective and Ohio Class. Defendants meticulously track the job routes, time, and precise locations of drivers during shifts. For example, Best Courier requires drivers to use Best Courier-supplied GPS tracking units during their shifts. A relevant Best Courier policy states:

4. **If** [sic] **are sitting without work more than 10 minutes** and no new jobs come across your phone, **contact the dispatcher** on the direct connect and let him know you are standing by. Occasionally there is a system problem. They may not know you are done. This includes when you sign on in the morning.

***

13. Make sure your GPS tracking unit is plugged in. You will get more work if the dispatchers can see where you are.

14. Watch and write down your expected delivery times. You need these to choose which stop to make next. **KEEP OUT OF THE RED.**

15. If you are carrying a late job and you receive a new pick-up in the same area, **Do not pick up a new job before dropping a late job in the same area.** If unsure ask the dispatcher where to stop first.

\*\*\*

18. Call the office if you cannot work. **Don't be a "no call, no show".**

\*\*\*

**Communicate!** If you make a mistake, miss a stop, have to stop for food, gas or a break, let the dispatcher know. They are always estimating how long it will be until you reach the next stop and using this information to choose your jobs. If unscheduled stops make you run late you will receive fewer jobs and make less money.

(Emphasis original.)

33. As above, drivers are entirely dependent upon Best Courier to perform their job duties.

34. Defendants have a far more significant role than drivers in drawing customers to Best Courier's delivery services.

35. Defendants' opportunity for profits and risk of loss are much greater than drivers', if any.

36. Defendants' drivers typically work full time for Defendants, and frequently work more than forty (40) hours per workweek.

37. Drivers work for Defendants in comparatively low-paying jobs, and typically hold their positions with Defendants for long periods of time. Drivers do not possess any special skills, other than holding a valid driver's license and passing a background check.

38. Drivers are under the direct supervision and control of Defendants' dispatchers, supervisors and managers. As described above, Defendants' dispatchers, supervisors and managers closely monitor drivers. Defendants' dispatchers, supervisors and managers supervise the work duties of Plaintiff and other members of the FLSA Collective and Ohio Class to make sure their job performance is of sufficient quality as determined by Defendants.

39.     Defendants' dispatchers, supervisors and managers assist drivers in the performance of their duties. For example, a relevant Best Courier policy states:

> Waiting time: The first 10 minutes are free. On the 11th minute a charge is added. If you are being delayed YOU MUST NOTIFY A DISPATCHER AFTER 10 MINUTES so they can make the decision whether or not to wait. IF A DISPATCHER IS NOT NOTIFIED YOU WILL NOT BE COMPENSATED FOR WAITING TIME.

Another relevant policy states:

> Permission to Leave (PTL): Best Courier never leaves a package without. signature unless the customer has given permission. If your page does not say you have permission to leave you must call in to the dispatcher so the customer can be contacted….

40.     Defendants instruct drivers how, when and where they are to perform their duties.

41.     Defendants own and control equipment, software and supplies that drivers are required to use to perform their work, including but not limited to smart phones/data plans/GPS devices supplied by Defendants and required to be used by drivers. Best Courier meticulously utilizes these devices to track drivers' time and location.

42.     Defendants conduct initial interviews and intense vetting procedures for drivers and hires drivers at the sole discretion of Best Courier.

43.     Best Courier requires its drivers to wear uniforms and utilize equipment that identifies them with Best Courier.

44.     Among other things, as a result of the requirements imposed by Defendants, drivers are limited in their ability to work for other companies or operate independent businesses or it is impracticable to do so. Because of Defendants' policies and the nature of drivers' employment and work duties, drivers are unable to have other means of full-time employment. Drivers' work for Best Courier regularly consumed the normal workweek of full-time employees.

9

45.     Best Courier interviews, supervises, dispatches, directs, disciplines, reprimands, schedules and performs other duties of an employer. Best Courier hires/fires drivers at will, and drivers' employments are not temporary nor have a fixed end-date. Best Courier performs functions associated with that of an employer with regard to an employee.

**Best Courier's Failure to Pay Minimum Wages
and Overtime Compensation**

46.     Plaintiff David Swickheimer and members of the FLSA Collective and Ohio Class frequently worked more than forty (40) hours in a single workweek.

47.     The FLSA required Defendants to pay drivers at least the minimum wage, and to pay them overtime compensation at one and one-half times their "regular rate" for all hours worked in excess of forty (40) hours in a workweek. 29 U.S.C. §§ 206, 207.

48.     However, Best Courier, having unlawfully misclassified Plaintiff and members of the FLSA Collective and Ohio Class as "independent contractors," failed to pay them minimum wages and overtime compensation.

49.     Department of Labor regulations provide that "'wages' cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or 'free and clear.'" 29 C.F.R. § 531.35. The FLSA's minimum wage requirements are not met "where the employee 'kicks-back' directly or indirectly" all or part of the employer's wage payment. *Id.* An FLSA violation occurs "in any workweek when the cost of [tools of the trade] purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act." *Id.*

50.     Defendants require drivers to maintain and provide a safe, insured and legally operable automobile to make deliveries. Drivers are required to pay all out-of-pocket costs

associated with their vehicles, including the costs of vehicle depreciation, maintenance and repairs, gasoline (including taxes), oil, insurance, and vehicle registration fees.

51.     As provided in ¶ 23 above, Defendants further impose additional charges and fines on drivers for failing to adhere to Best Courier's strict rules and requirements.

52.     Defendants also require drivers to lease, day to day, a smart phone/data plan directly from Best Courier. Best Courier charges drivers a daily rate "for each day that BEST opens its offices for business[.]" Defendants' policy further states "You are charged a daily rate for the Nextel phone for each day the Best Office is open regardless of whether you are taking work or not."

53.     The FLSA required Defendants to pay Plaintiff and other members of the FLSA Collective and Ohio Class at least the minimum wage. 29 U.S.C. § 206. The FLSA incorporates state minimum wage laws when they include a higher minimum wage than the FLSA. *Id.* Ohio's minimum wage is adjusted annually as specified by Ohio Const. Article II, Section 34a, and was $8.10 per hour in 2016, $8.15 per hour in 2017, $8.30 per hour in 2018, and is $8.55 per hour in 2019.

54.     Best Courier failed to pay at least the applicable minimum wage to Plaintiff and other members of the FLSA Collective and Ohio Class. Best Courier paid drivers low rates of compensation, and then deducted charges, fines and expenses that Best Courier required the drivers to incur. In some or all workweeks, the amounts paid to drivers "finally and unconditionally or 'free and clear'" did not equal or exceed the minimum wage after deducting drivers' expenses for, for example, the costs of vehicle depreciation, maintenance and repairs, gasoline (including taxes), oil, insurance, vehicle registration fees, Defendants' smart phone/data plan rental charge fee, and fines imposed upon by Defendants.

55.    Defendants did not reimburse Plaintiff and members of the FLSA Collective and Ohio Class for driving a personal vehicle for business use at the IRS standard business mileage rate. Defendants also did not keep accurate, contemporaneous expense records and reimburse the drivers accordingly. As Defendants did not keep accurate records and reimburse drivers accordingly, regularly causing drivers' wages to fall below minimum wage, drivers are entitled to vehicle depreciation, maintenance and repairs, gasoline (including taxes), oil, insurance, and vehicle registration fees at the IRS standard business mileage rate. *See* DOL Field Operations Handbook § 30c15(a) (issued 10/31/2016).

56.    In addition, during their employment with Defendants, Plaintiff and other members of the FLSA Collective and Ohio Class were required to work overtime, more than forty (40) hours per workweek.

57.    The FLSA and Ohio law required Defendants to pay overtime compensation to their employees at the rate of one and one-half times their regular rate for the hours they worked in excess of forty (40). 29 U.S.C. § 207; O.R.C. §§ 4111.03, 4111.10.

58.    Defendants failed to pay Plaintiff and other members of the FLSA Collective and Ohio Class overtime compensation at one and one-half times their "regular rate" for all hours worked in excess of forty (40) hours in a workweek. Defendants, having unlawfully misclassified Plaintiff and other members of the FLSA Collective and Ohio Class as "independent contractors," failed to pay drivers overtime compensation in violation of the FLSA and Ohio Wage Law.

59.    Although Defendants suffered and permitted Plaintiff and other members of the FLSA Collective and Ohio Class to work more than forty (40) hours per workweek, Defendants failed to pay Plaintiff and other members of the FLSA Collective and Ohio Class overtime at a

rate of one and one half times the regular rate of pay for all hours worked over forty (40) in a workweek. As a result, Plaintiff and other members of the FLSA Collective and Ohio Class were not paid overtime for their overtime hours worked as required by the FLSA, 29 U.S.C. §§ 201, *et seq.*, and Ohio law.

### Defendants' Record Keeping Violations

60.     Despite being able to track drivers to the second, Best Courier failed to make, keep and preserve complete and accurate records of Plaintiff and other members of the FLSA Collective and Ohio Class sufficient to determine their lawful wages, actual hours worked, and other conditions of employment as required by the FLSA and Ohio law.

61.     The FLSA and Ohio law required Defendants to maintain accurate and complete records of employees' time worked and amounts paid. 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.2, 516.5, 516.6, 516.7; O.R.C §§ 4111.08, 4111.14(F); Ohio Const. Art. II, § 34a. For example, federal regulations require employers to make and keep payroll records showing information and data such as the employee's name, occupation, time of day and day of week which the workweek begins, regular hourly rate of pay for any week in which overtime compensation is due, hours worked each workday and total hours worked each workweek, total daily or weekly straight time earnings, total premium pay for overtime hours, total wages paid each pay period and date of payment and pay period covered by the payment. 29 C.F.R. § 516.2. Ohio law also provides that employers "shall maintain a record of the name, address, occupation, pay rate, hours worked for each day worked and each amount paid an employee for a period of not less than three years following the last date the employee was employed." Ohio Const. Art. II, § 34a.

62.     Defendants failed to keep accurate records of hours worked. Thus, Defendants did not record or pay all hours worked in violation of the FLSA and Ohio law.

## The Willfulness of Defendants' Violations

63.     Defendants knew that Plaintiff and other members of the FLSA Collective and Ohio Class were entitled to minimum wage and overtime compensation under federal and state law or acted in reckless disregard for whether they were so entitled.

64.     The above practices and policies resulted in minimum wage an overtime violations of the FLSA, 29 U.S.C. §§ 201-219; O.R.C. Chapter 4111; and Ohio Const. Art. II, § 34a.

## COLLECTIVE ACTION ALLEGATIONS

65.     Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

66.     Plaintiff brings this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b), which provides that "[a]n action to recover the liability" prescribed by the FLSA "may be maintained against any employer … by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."

67.     The FLSA Collective consists of:

All current and former delivery drivers and other workers with similar job titles or positions who worked for Defendants during the period of three years preceding the commencement of this action to the present.

68.     Such persons are "similarly situated" with respect to Defendants' FLSA violations in that all were non-exempt employees of Defendants, all were subjected to and injured by Defendants' unlawful practice of failing to pay minimum wage for all hours worked, failing to pay overtime compensation for all hours worked in excess of forty (40) hours per workweek, and all have the same claims against Defendants for unpaid minimum wage and overtime compensation as well as for liquidated damages, attorneys' fees, and costs.

14

69.     Conditional certification of this case as a collective action pursuant to 29 U.S.C. § 216(b) is proper and necessary so that such persons may be sent a Court-authorized notice informing them of the pendency of this action and giving them the opportunity to "opt in."

70.     Plaintiff cannot yet state the exact number of similarly-situated persons but avers, upon information and belief, that they consist of over 80 persons. Such persons are readily identifiable through the payroll and personnel records Defendants have maintained, and were required to maintain, pursuant to the FLSA and regulations thereunder that have the force of law.

## CLASS ACTION ALLEGATIONS

71.     Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

72.     Plaintiff also brings this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and other members of a class of persons who assert claims under the laws of the State of Ohio (the "Ohio Class"), defined as:

> All current and former delivery drivers and other workers with similar job titles or positions who worked for Defendants during the period of two years preceding the commencement of this action to the present.

73.     The Ohio Class is so numerous that joinder of all class members is impracticable. Plaintiff cannot yet state the exact number of class members but avers, upon information and belief, that they consist of over 80 persons.  The number of class members, as well as their identities, are ascertainable from the payroll and personnel records Defendants have maintained, and were required to maintain, pursuant to the FLSA and Ohio law.  29 U.S.C. § 211(c); 29 C.F.R. §§ 516.2, 516.5, 516.6, 516.7; O.R.C §§ 4111.08, 4111.14(F); Ohio Const. Art. II, § 34a.

74.     There are questions of law or fact common to the Ohio Class, including but not limited to:

Whether Defendants' conduct as described above violates Ohio law governing payment of minimum wage and overtime compensation;

Whether Defendants denied employees minimum wages under Ohio law where, among other things, drivers were not paid at least minimum wage for the hours they worked in each workweek; and

Whether Defendants denied employees overtime compensation under Ohio law where, among other things, drivers were not paid at least one and one-half times their "regular rate" for all hours worked in excess of forty hours in each workweek.

75.     Plaintiff's claims are typical of the claims of other members of the Ohio Class. Plaintiff's claims arise out of the same uniform course of conduct by Defendants, and are based on the same legal theories, as the claims of other class members.

76.     Plaintiff will fairly and adequately protect the interests of the Ohio Class. Plaintiff's interests are not antagonistic to, but rather are in unison with, the interests of other class members. Plaintiff's counsel have broad experience in handling class action litigation, including wage-and-hour litigation, and are fully qualified to prosecute the claims of the Ohio Class in this case.

77.     The questions of law or fact that are common to the Ohio Class predominate over any questions affecting only individual members. The primary questions that will determine Defendants' liability to the class, listed above, are common to the class as a whole, and predominate over any questions affecting only individual class members.

78.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Requiring class members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources.  Many class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually.

Certification of this case as a class action pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

**COUNT ONE**
**(FLSA Minimum Wage Violations)**

79.     Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

80.     Plaintiff brings this claim for violation of the FLSA's minimum wage provisions on behalf of himself and members of the FLSA Collective who may join this case pursuant to 29 U.S.C. § 216(b).

81.     The FLSA requires that "non-exempt" employees receive a minimum hourly wage for all work their employers suffer, permit or require them to perform. 29 U.S.C. § 206.

82.     Defendants failed to comply with the requirements of 29 U.S.C. § 206, by paying employees less than the applicable Ohio minimum wage. As more fully described above, Best Courier, in violation of law, misclassified its drivers as so-called "independent contractors," when in fact they were employees of Best Courier according to the standards applicable under the FLSA.

83.     Defendants have engaged in a series of unlawful acts, practices, policies, and procedures in violation of the FLSA, including refusing and/or failing to calculate and pay Plaintiff's and other members of the FLSA Collective's minimum wages as required by federal law. 29 U.S.C. § 206.

84.     Defendants' unlawful conduct directly and proximately caused Plaintiff and other members of the FLSA Collective to suffer damages for which they are entitled to judgment.

85.     Defendants' violations have been willful and/or in reckless disregard of Plaintiff's and other members of the FLSA Collective's rights, and entitle Plaintiff and other members of

the FLSA Collective to liquidated and/or punitive damages. 29 U.S.C. § 216(b) further provides that "[t]he court … shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

## COUNT TWO
### (Ohio Minimum Wage Violations)

86.     Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

87.     Plaintiff brings this claim for violation of the Ohio's constitutional and statutory minimum wage provisions on behalf of himself and other members of the FLSA Collective and Ohio Class.

88.     Ohio Wage Law requires that employees receive a minimum hourly wage for all work their employers suffer, permit or require them to perform. Art. II, Sec. 34a of the Ohio Constitution; O.R.C. Chapter 4111.

89.     Based on the improper practices described herein, including Best Courier's misclassification of drivers as so-called "independent contractors," when in fact they were employees of Best Courier according to the standards applicable under the FLSA and Ohio law, Defendants failed to comply with the requirements of Ohio law by paying employees less than the applicable minimum wage rate.

90.     Defendants have engaged in a series of unlawful acts, practices, policies, and procedures in violation of Art. II, Sec. 34a of the Ohio Constitution & O.R.C. Chapter 4111, including by refusing and/or failing to calculate and pay Plaintiff's and other members of the FLSA Collective's and Ohio Class' minimum wages as required by Ohio law.

91.     Defendants' unlawful conduct directly and proximately caused Plaintiff and other members of the FLSA Collective and Ohio Class to suffer damages for which they are entitled to judgment.

92.     Plaintiff and other members of the FLSA Collective and Ohio Class are entitled to "equitable and monetary relief" including "two times the amount of the back wages", or triple damages for Defendants' minimum wage violations pursuant to Ohio Const. Art. II, Sec. 34a & O.R.C. Chapter 4111.

### COUNT THREE
**(FLSA Overtime Violations)**

93.     Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

94.     Plaintiff brings this claim for violation of the FLSA's overtime provisions on behalf of himself and members of the FLSA Collective who may join this case pursuant to 29 U.S.C. § 216(b).

95.     The FLSA requires that "non-exempt" employees receive overtime compensation of "not less than one and one-half times" the employees' "regular rate" of pay.  29 U.S.C. § 207(a)(1).

96.     Plaintiff and other members of the FLSA Collective should have been paid overtime wages in the amount of 150% of their "regular rate" for all hours worked in excess of forty (40) hours per workweek.

97.     Defendants did not pay overtime compensation to Plaintiff and the FLSA Collective at the rate of one and one-half times their regular rate for all of their overtime hours.

98.     By engaging in the above-described practices, Defendants willfully violated the FLSA and regulations thereunder that have the force of law.

99.     As a result of Defendants' violations of the FLSA, Plaintiff and the FLSA Collective were injured in that they did not receive wages due to them pursuant to the FLSA. 29 U.S.C. § 216(b) entitles Plaintiff and the FLSA Collective to an award of "unpaid overtime compensation" as well as "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b) further provides that "[t]he court … shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

## COUNT FOUR
### (Ohio Overtime Violations)

100.     Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

101.     Plaintiff brings this claim for violation of the Ohio overtime compensation statute, O.R.C. § 4111.03 on behalf of himself and other members of the FLSA Collective and Ohio Class.

102.     At all times relevant, Defendants were employers covered by the Ohio overtime compensation statute, O.R.C. § 4111.03.

103.     Defendants' failure to compensate overtime hours violated the Ohio overtime compensation requirements set forth in O.R.C. § 4111.03.

104.     These violations of Ohio law injured Plaintiff and other members of the FLSA Collective and Ohio Class in that they did not receive wages due to them pursuant to that statute.

105.     Having injured Plaintiff and other members of the FLSA Collective and Ohio Class, Defendants are "liable to the employee[s] affected for the full amount of the overtime wage rate, less any amount actually paid to the employee[s] and for costs and reasonable attorney's fees as may be allowed by the court " under Ohio law. O.R.C. § 4111.10.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Honorable Court:

A.    Conditionally certify this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b) and direct that Court-approved notice be issued to similarly-situated persons informing them of this action and enabling them to opt in;

B.    Certify this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of Plaintiff and other members of the Ohio Class;

C.    Enter judgment against Defendants, jointly and severally, and in favor of Plaintiff, the Opt-Ins who join this case pursuant to 29 U.S.C. § 216(b), and the members of the Ohio Class;

D.    Award compensatory damages to Plaintiff, the Opt-Ins who join this case pursuant to 29 U.S.C. § 216(b), and the members of the Ohio Class in the amount of their unpaid overtime wages, as well as liquidated damages in an equal amount;

E.    Award compensatory damages to Plaintiff, the Opt-Ins who join this case pursuant to 29 U.S.C. § 216(b), and the members of the Ohio Class in the amount of their unpaid minimum wages, in addition to liquidated damages calculated as an additional two times the amount of unpaid minimum wages found due to Plaintiff, the FLSA Collective and Ohio Class under Ohio Constitution Art. II, § 34a; and

F.    Award Plaintiff compensatory and punitive damages, his costs and attorneys' fees incurred in prosecuting this action, and such further relief as the Court deems equitable and just.

*Respectfully submitted,*

*s/ Kevin M. McDermott II*
Joseph F. Scott (0029780)
Ryan A. Winters (0086917)
Kevin M. McDermott II (0090455)
SCOTT & WINTERS LAW FIRM, LLC
The Caxton Building
812 Huron Rd. E., Suite 490
Cleveland, OH 44115
P: (216) 912-2221 | F: (216) 350-6313
jscott@ohiowagelawyers.com
rwinters@ohiowagelawyers.com
kmcdermott@ohiowagelawyers.com

*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

*s/ Kevin M. McDermott II*
Kevin M. McDermott II (0090455)