UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID SWICKHEIMER,<br>*On behalf of himself and all others*<br>*similarly situated,* | ) ) ) ) | CASE NO. 2:19-CV-03706<br><br>JUDGE JAMES L. GRAHAM |
| Plaintiff, | ) ) ) | MAGISTRATE JUDGE<br>CHELSEY M. VASCURA |
| *v.* | ) ) | |
| BEST COURIER, INC., *et al.,* | ) ) ) | **JOINT MOTION FOR APPROVAL<br>OF SETTLEMENT** |
| Defendants. | ) ) | |

The parties respectfully and jointly move the Court to approve the proposed Settlement

reached by the parties and memorialized in the *Joint Stipulation of Settlement and Release*

("Settlement") attached as Exhibit 1. The Settlement seeks to resolve all individual and collective

wage-and-hour claims that were or could have been brought in this Action.

If approved by the Court, the Settlement will provide settlement payments to the Named

Plaintiff and Settlement Opt-In Plaintiffs representing a substantial percentage of the potential

value of their claims. The parties respectfully submit that the proposed Settlement is fair,

reasonable, and adequate, and satisfies the criteria for approval under § 216(b) of the FLSA.

The following settlement documents are respectfully submitted for approval or entry by

the Court:

| | |
|---|---|
| Exhibit 1: | *Joint Stipulation of Settlement and Release*; |
| Exhibit 2: | Proposed Final Order and Judgment Approving Settlement<br>and Dismissing the Action; |
| Exhibit 3: | Exhibit A to *Joint Stipulation of Settlement and Release* –<br>Individual Payments Allocation Schedule; and |
| Exhibit 4: | Declaration of Plaintiffs' Counsel |

Exhibit 5:     Records of Plaintiffs' Counsels' Attorney Time

Exhibit 6:     Records of Plaintiffs' Counsels' Costs

The following sections of this Motion explain the nature of the Action, the negotiations, the principal terms of the Settlement, and the propriety of approving the Settlement and its proposed distributions of settlement proceeds.

## I.    <u>THE LITIGATION</u>

### A.  The Claims and Issues

Named Plaintiff David Swickheimer filed this Action in the United States District Court for the Southern District of Ohio, Eastern Division on August 26, 2019. (*See* Electronic Case Filing No. ("ECF #") 1.) In the action, Named Plaintiff alleged, among other things, that Defendants misclassified Named Plaintiff and other similarly situated courier delivery drivers ("delivery drivers") of Defendants as independent contractors and failed to pay Plaintiff and other similarly situated delivery drivers overtime and minimum wages allegedly required to be paid under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 ("FLSA"), and the Constitution of the State of Ohio, Ohio Const. Art. II, Sec. 34a, and Ohio's wage-and-hour statutes, O.R.C. Chapter 4111. (*Id.*) On November 2, 2020, Named Plaintiff filed a Motion to Amend the Class Definition in Plaintiff's Complaint Pursuant To Rule 15(a)(2) (ECF #42), which the Court granted on December 2, 2020 (ECF #47). Defendants filed an Answer to Plaintiff's First Amended Complaint, denying all liability under any of Plaintiff's claims. (ECF #49.)

Defendant Best Courier, Inc. ("Best Courier") is a Columbus, Ohio-based company providing delivery drivers to deliver packages and materials for immediate service, medical, inter-company, and mail service clients. Defendant Joe Eckart is an owner, CEO and President of Defendant Best Courier, Inc. Plaintiff David Swickheimer contends that he and other delivery

2

drivers were misclassified as independent contractors and Defendants therefore failed to pay the delivery drivers minimum wages and overtime wages allegedly required to be paid under the FLSA and Ohio law. The parties hotly dispute whether Named Plaintiff and Settlement Opt-In Plaintiffs and others were properly classified as independent contractors.

Obtaining the alleged unpaid wages at trial would be no easy task. In particular, Plaintiffs would need to, among other things: (1) convince the Court that the FLSA claim should proceed to trial on a collective basis under 29 U.S.C. § 216(b); (2) defeat Defendants' argument that delivery drivers were properly classified as independent contractors; (3) prove that each opt-in collective action Plaintiff really performed compensable overtime work each workweek and were not paid minimum wages for all hours worked, in addition to the amounts of these times, and defeat Defendants' argument that the amount of work Plaintiffs allege, both with regard to frequency and duration, is an exaggeration that cannot be supported with admissible evidence; (4) defeat Defendants' legal argument that any alleged violation was not willful and/or made in good faith; and (5) succeed in their highly disputed argument that the IRS mileage reimbursement rate should be applied for the purpose of determining delivery drivers' vehicle expenses for purposes of a minimum-wage determination.

## B. Conditional Class Certification

The Court granted the Parties' Joint Motion and Stipulation for Conditional Certification and Notice (*see* ECF ##15, 15-1) on March 23, 2020, with minor revisions as to the Notice (ECF ##16, 17, 17-1, 19.) Notice was mailed to putative class members, and the opt-in period ended forty-five (45) days after the date the Notice and Opt-In Consent Form were mailed. (*See* ECF #15, 15-1.) On November 1, 2021, the Court dismissed five (5) Non-Responsive Opt-Ins for the Non-Responsive Opt-In Plaintiffs' failure to comply with discovery and for their failure to

prosecute their claims under Fed. R. Civ. P. 41(b). (ECF #67; *see* ECF #64.) The individuals who opted in to Case No. 2:19-cv-03706, who have not withdrawn their consent form, and who have not had their claims dismissed by the Court, and who are listed on the Individual Payments Allocation Schedule (along with the Named Plaintiff) attached to the settlement Agreement (Ex. 1) as Exhibit A, form the group designated as "Settlement Opt-In Plaintiffs" for purposes of this Settlement.

### C. Discovery and Document Analysis

The parties engaged in extensive discovery, and Defendants ultimately produced voluminous wage-and-hour data and documents necessary to fully and fairly evaluate the claims of the Named Plaintiff and Settlement Opt-In Plaintiffs. Prior to engaging in settlement negotiations, Plaintiffs' Counsel conducted a comprehensive investigation, including an extensive analysis of the wage-and-hour information and data and documents.

Defendants provided Plaintiffs approximately 44,400 pages of PDF documents in addition to spreadsheets containing approximately 386,000 data points. Plaintiffs' counsel both manually and electronically transcribed a statistically significant sample of this data into an electronic format. Plaintiffs' computation permitted a calculation of the unpaid wages for the original opt-in Plaintiffs based off a sample of approximately 10% or more of the total "Account Register(s)," route and day payment registers, GPS "Activity Log(s)," and job identification/route location spreadsheets for 40% of the original Plaintiffs, and 100% of the records for 60% of the original Plaintiffs (whose tenures were relatively shorter). For the participating Named Plaintiff and Settlement Opt-In Plaintiffs at mediation, Plaintiffs' minimum wage damages calculation equated to $25,794.29, and Plaintiffs' overtime wage damages calculation equaled $7,302.39. The documents and data were extensively analyzed by both sides

to assess the strengths and weaknesses of the case and determine computations of the claimed damages. The discovery and analyses were difficult and time-consuming, but proved instrumental to the ultimate negotiation of the proposed Settlement.

## II.    THE NEGOTIATIONS

Following Plaintiff's receipt of the voluminous wage-and-hour data and documents necessary to fully and fairly evaluate the claims of the Named Plaintiff and Settlement Opt-In Plaintiffs, the parties engaged in a mediation before Attorney Craig Woods on August 25, 2020. (*See* ECF #29.) The parties were at an impasse following this mediation. (*Id.*) Nevertheless, Plaintiffs and Defendants, through counsel, continued informal negotiations throughout the pendency of the matter, and ultimately agreed to the terms of a settlement in the middle of October, 2021. These negotiations resulted in a global settlement encompassing all issues, subject to approval by the Court pursuant to § 216(b). The distributions and settlement as a whole, including the attorneys' fees to Plaintiffs' Counsel, are supported by the Declaration of Plaintiffs' Counsel. (*See* Ex. 4.) Formal settlement documents, including the *Joint Stipulation of Settlement and Release* attached as Exhibit 1, were later prepared and executed for approval by the Court.

## III.    THE SETTLEMENT TERMS

Defendants have agreed to pay the Total Settlement amount of $70,000.00 as set forth in the Settlement Agreement (Ex. 1 ¶ 15). That sum will be used to make settlement payments to the Named Plaintiff and Settlement Opt-In Plaintiffs which shall constitute adequate consideration for the Settlement and will be made in full and final settlement of: (1) the claims released by Named Plaintiff and Settlement Opt-In Plaintiffs; (2) Attorneys' Fees and Costs; (3) Service Award; and (4) any other obligations of Defendants under the Settlement Agreement.

If approved by the Court, the proposed Settlement will make individual settlement payments available to the Named Plaintiff and Settlement Opt-In Plaintiffs representing a substantial percentage of the potential value of their claims. The proposed payments to Named Plaintiff and Settlement Opt-In Plaintiffs – set forth in the Individual Payments Allocation Schedule (Ex. 3) – are to be distributed *pro rata* among the Named Plaintiff and Settlement Opt-In Plaintiffs based on tenure. The settlement achieves an excellent result for the covered delivery drivers, and results in an average payout of $6,000.20 per worker, or approximately 91% of the wage damages calculated at mediation.

In addition, the Named Plaintiff, David Swickheimer, will receive a service award of $5,000.00 in recognition of his service to Plaintiffs' Counsel and his contribution to achieving this Settlement. The proposed service award was well-earned. Among other things, Plaintiff Swickheimer consulted with Plaintiffs' Counsel at critical stages; helped counsel review and respond to the documents provided by Defendants and prepare a demand on behalf of himself and members of the FLSA collective; personally provided written responses to Defendants' comprehensive discovery requests; prepared and sat for/appeared for a deposition by Defendants; and provided and reviewed other important documents and information throughout the course of the litigation. His contributions were instrumental in enabling Plaintiffs' Counsel to negotiate the proposed Settlement. Named Plaintiff Swickheimer's efforts have resulted in a significant recovery for the Settlement Opt-In Plaintiffs.

Plaintiffs' Counsel will receive an agreed-upon amount for attorneys' fees and reimbursement of litigation costs. The payment to counsel represents a significant reduction from the total lodestar attorney fees expended in the prosecution of the Action. (*See* Exs. 4, 5.) The attorneys' fees, and the settlement as a whole, are supported by the Declaration of Plaintiffs'

Counsel. (*Id*.) As provided in the Settlement Agreement, attorneys' fees and costs to Plaintiffs' Counsel may not be disbursed until after the final approval order is issued by the Court, contemporaneously along with the settlement payments to Named Plaintiff and Settlement Opt-In Plaintiffs.

### IV.     THE PROPRIETY OF APPROVAL

Pursuant to the FLSA, claims for back wages and other damages may be settled or compromised only with the approval of the district court or the Secretary of Labor. *See, e.g., Lewis v. Huntington Natl. Bank,* 789 F.Supp.2d 863, 869 (S.D.Ohio 2011) (citing *Barrentine v. Arkansas-Best Freight Sys*., 450 U.S. 728, 740, 101 S. Ct. 1437, 67 L. Ed. 2d 641 (1981); *Walton v. United Consumers Club*, 786 F.2d 303, 306 (7th Cir. 1986); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-1353 (11th Cir. 1982)). To approve the settlement, the Court should determine that the compromise is a fair and reasonable resolution of a bona fide dispute over FLSA provisions. *Zego v. Meridian-Henderson*, S.D.Ohio No. 2:15-CV-3098, 2016 U.S. Dist. LEXIS 132320, at *3 (Sep. 27, 2016) (quoting *Kritzer v. Safelite Solutions, LLC*, No. 2:10-cv-729, 2012 U.S. Dist. LEXIS 74994, 2012 WL 1945144, at *5 (S.D. Ohio May 30, 2012) (The Court must ensure "there is a bona fide dispute between the parties as to the employer's liability under the FLSA" and that the proposed settlement "is fair, reasonable, and adequate."); *see also Landsberg v. Acton Ents*., S.D.Ohio No. C2-05-500, 2008 U.S. Dist. LEXIS 51544, at *2 (June 16, 2008), fn. 1 (quoting *Lynn's Food Stores, Inc*., 679 F.2d at 1353).

#### A. The Seven-Factor Standard is Satisfied

In *Kritzer*, the court used seven factors to evaluate whether the proposed settlement was "fair, reasonable, and adequate" for purposes of the FLSA, 29 U.S.C. 216(b). *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *19-20. *See also Crawford v. Lexington-Fayette Urban Cty. Govt.,*

E.D.Ky. No. 06-299-JBC, 2008 U.S. Dist. LEXIS 90070, at *13-14 (Oct. 23, 2008) (applying an alternative formulation of the seven-factors) (citing *UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007), citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir.1992)); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983)). These factors include "the risk of fraud or collusion, the complexity, expense, and likely duration of the litigation, the amount of discovery engaged in, the likelihood of success on the merits, and the public interest in settlement." *Sharier v. Top of the Viaduct, LLC,* N.D. Ohio No. 5:16-cv-343, 2017 U.S. Dist. LEXIS 35584, at *4 (Mar. 13, 2017) (citing *Crawford*, 2008 WL 4724499, at *3 (further citation omitted)). "The court may choose to consider only factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case." *Gentrup v. Renovo Servs., LLC,* S.D.Ohio No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, at *8 (June 24, 2011) (citing *Redington v. Goodyear Tire & Rubber Co.,* 2008 U.S. Dist. LEXIS 64639, 2008 WL 3981461 at *11 (N.D. Ohio Aug. 23, 2008), citing *Granada,* 962 F.2d at 1205-06)).

A key factor – the likelihood of success on the merits balanced against the amount and form of the settlement – strongly supports approval. Litigating FLSA claims is always risky and uncertain, and Plaintiffs would have to establish not only Defendants' liability, which Defendants vehemently deny, but also each Named Plaintiff and Settlement Opt-In Plaintiff delivery driver's damages. Of particular contention in this specific case is the factual and legal dispute as to whether the covered delivery drivers performed overtime work each workweek, in addition to the amounts of these times. In addition, the parties deeply disputed whether the IRS mileage reimbursement rate should be applied for the purpose of determining delivery driver vehicle expenses for purposes of a minimum-wage determination. Defendants argued that the amount of damages Plaintiffs allege is an exaggeration that cannot be supported with admissible

evidence, and that even if delivery drivers worked more than forty hours in a workweek they were nonetheless properly classified as independent contractors and thus not entitled to overtime compensation or minimum wages – as independent contractors, this is a risk they assumed as self-employed independent businesses. The outcome of litigating the case would be uncertain, and the risks of continued litigation would be high. In contrast, the Settlement assures that the Plaintiffs will receive significant compensation. Given the uncertainties surrounding trial in this matter, the certainty and finality of a settlement that will substantially benefit the Named Plaintiff and Settlement Opt-In Plaintiffs is in the public interest. *See Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *24 (the public interest is served when a settlement "ends potentially long and protracted litigation") (citing *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 369 (S.D. Ohio 2006); *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007)). Indeed, this matter has been pending for over 27 months. The proposed Settlement will eliminate the risk and delay of litigation and make substantial payments available to the Named Plaintiff and Settlement Opt-In Plaintiffs to this action.

The other six factors are satisfied as well. Wage-and-hour cases for groups of employees are always expensive and time-consuming and the expense and likely duration of continued litigation favor approval. Given the factual and legal complexity of the issues in this case, there is no guarantee that Plaintiffs will prevail at trial and the litigation could be long and protracted. In contrast, the Settlement assures that the Plaintiffs will receive significant compensation. Plaintiffs' Counsel have extensive experience litigating FLSA claims, and there is no fraud or collusion. The Parties engaged in substantial document review, comprehensive data analysis, and due diligence prior to arduous negotiations, and the issues were well understood. The settlement was reached as a result of arms-length negotiation between parties represented by competent

counsel. *See Sharier*, 2017 U.S. Dist. LEXIS 35584, at *4-5. Counsel on both sides support the Settlement, as does the Plaintiff himself. (*See* Exs. 1, 4.)

### B.  The Settlement Payments Are Fair, Reasonable, and Adequate

As a part of the scrutiny it applies to an FLSA collective action settlement, the Court should "ensure that the distribution of settlement proceeds is equitable." *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *25 (citing *Rotuna v. W. Customer Mgt. Group, LLC,* N.D.Ohio No. 4:09CV1608, 2010 U.S. Dist. LEXIS 58912, at *6 (June 15, 2010), citing *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 855 (1999)).

In the present case, the proposed individual settlement payments to the Named Plaintiff and Settlement Opt-In Plaintiffs – listed in the Individual Payments Allocation Schedule (Ex. 3) – achieves an excellent result for the covered delivery drivers, an average payout of $6,000.20 per worker, or approximately 91% of the wage damages calculated at mediation after the payment of attorney fees and costs. Moreover, the allocations are based *pro rata* among the Named Plaintiff and Settlement Opt-In Plaintiffs based on tenure. This method of allocating the settlement proceeds in a wage-and-hour case is eminently equitable and fair, as it is based on the Named Plaintiff and Settlement Opt-In Plaintiffs periods of employment where Defendants kept no records of the actual hours worked by the Plaintiffs.

### C.  The Service Award to the Named Plaintiff Is Proper and Reasonable

A reasonable service award properly recognizes the representative Plaintiff's services on behalf of other beneficiaries of the settlement and his contribution to achieving a positive outcome. *In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990).

In this Circuit, reasonable service awards are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing the case and advising counsel in prosecution of the case, or where the named plaintiffs faced the risk of retaliation or threats as a result of their participation as class representatives." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273 (S.D. Ohio 1997). Service awards "are not uncommon, and 'courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'" *Dillworth v. Case Farms Processing, Inc.*, N.D.Ohio No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *17 (Mar. 8, 2010) (approving $6,000 and $4,000 to representative Plaintiffs) (quoting *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000)); *Osman v. Grube, Inc.*, N.D.Ohio No. 3:16-cv-00802-JJH, 2018 U.S. Dist. LEXIS 78222, at *5-6 (May 4, 2018) (approving $7,500 service award to named plaintiff).

Indeed, the named Plaintiff David Swickheimer incurred "substantial direct and indirect financial risks in attempting to vindicate the rights of others" and "spent a good deal of time and effort in this case." *In re Dun & Bradstreet*, 130 F.R.D. at 373-74. Plaintiff Swickheimer consulted with Plaintiffs' Counsel at critical stages; helped counsel review and respond to the documents provided by Defendants and prepare a demand on behalf of himself and members of the FLSA collective; personally provided written responses to Defendants' comprehensive discovery requests; prepared and sat for/appeared for a deposition by Defendants; and provided and reviewed other important documents and information throughout the course of the litigation. His contributions were instrumental in enabling Plaintiffs' Counsel to negotiate the proposed Settlement. Furthermore, Plaintiff David Swickheimer faithfully represented the interests of the

Settlement Opt-In Plaintiffs and ably assisted Plaintiffs' Counsel. His contributions were instrumental in achieving this Settlement on behalf of all concerned. The proposed service award of $5,000.00 is reasonable and well-earned.

### D.  Dismissal of the Rule 23 Claims *Without Prejudice* is Appropriate

In this case, the proposed Rule 23 class has neither been certified, nor has a motion for certification been filed. As here, "[b]ecause the Rule 23 class at issue here has neither been certified nor proposed for certification for the purposes of settlement, the text of Rule 23(e) does not indicate that the voluntary dismissal sought in this case requires court approval." *Jones v. H&J Restaurants*, W.D.Ky. No. 5:19-CV-105-TBR, 2020 U.S. Dist. LEXIS 219071, at *18-23 (Nov. 20, 2020). That said, to the extent an argument can be made that "Rule 23(e) applies in a precertification context where putative class members are likely to be prejudiced," *id*. (citing *Doe v. Lexington-Fayette Urban County Gov't*, 407 F.3d 755, 764 (6th Cir. 2005)), the parties state the following.

In evaluating whether "a court should consider in deciding whether to require notice to putative class members," the court considers the "degree of publicity a case has received, evidence of collusion, and the danger of dismissal having a preclusive effect on absent class members." *Id.* Here, as in *Jones*, the parties are not aware of any publicity. Further, as no "Rule 23 class was certified, [] no notice of a pending Rule 23 action was ever distributed." Here, as in *Jones*, the Court "has no reason to suspect that absent Rule 23 class members are relying on the proposed class action or that they will be prejudiced by dismissal without notice." Moreover, potential plaintiffs were previously sent an FLSA opt-in notice that directly stated: "If you choose not to join this lawsuit, you will not be affected by any judgment or settlement rendered

in this case, whether favorable or unfavorable. You will be free to file your own lawsuit, or you may choose to do nothing."

Moreover, as above, the Parties engaged in substantial document review, comprehensive data analysis, and due diligence prior to arduous negotiations, and the issues were well understood. The settlement was reached as a result of arms-length negotiation between parties represented by competent counsel. There is no evidence of collusion.

### E.  Plaintiffs' Counsels' Fees and Expenses Are Proper and Reasonable

The FLSA provides that the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendants, and the costs of the action." 29 U.S.C. § 216(b). Ohio wage-and-hour statutes also provide for "costs and reasonable attorney's fees as may be allowed by the court." O.C.R. § 4111.10. The FLSA's mandatory fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley v. Higgins,* 19 F.3d 1126, 1134-35 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994) (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502-03 (6th Cir.1984)). The Sixth Circuit has "upheld substantial awards of attorney's fees even though a plaintiff recovered only nominal damages" *Fegley,* 19 F.3d at 1134 (quoting *Posner v. Showroom, Inc*., 762 F.2d 1010, 1985 U.S. App. LEXIS 14544, at *6 (6th Cir.1985)). *Accord*, *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *27 *(May 30, 2012)* (the fee award must be "adequate to attract competent counsel but … not produce a windfall") (citing *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 2008), quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)). "In determining what constitutes a 'reasonable' fee award, '[c]ourts should not place an

undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees . . . encourage[s] the vindication of congressionally identified policies and rights." *Funk v. Airstream, Inc*., S.D.Ohio No. 3:17-cv-260, 2019 U.S. Dist. LEXIS 162334, at *5 (Sep. 23, 2019) (citing *Fegley*, 19 F.3d at 1134-35 (internal quotations and citations omitted)). "There is a 'strong presumption' that a prevailing plaintiff's attorney is entitled to the lodestar fee," which is "the product of the number of hours reasonably spent on the case by an attorney times a reasonable hourly rate." *Id*. (citing *Adcock-Ladd v. Secy. of Treasury*, 227 F.3d 343, 350 (6th Cir.2000); *Moore v. Freeman*, 355 F.3d 558, 565 (6th Cir.2004); *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)).

Recently, in *Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 616-617 (6th Cir.2021) the Sixth Circuit ordered attorney fees to be calculated based on the lodestar attorneys' fees request, as opposed to a percentage of the total recovery, noting that:

> "Neither the text nor the purpose" of the FLSA "supports imposing a proportionality limit on recoverable attorneys' fees." The very reason that the FLSA (and the civil-rights acts) mandate an award of reasonable fees to prevailing plaintiffs is that the monetary value of their claims is often too small to support the cost of litigating them. If courts in these cases capped the awardable fees at some percentage of that monetary value, therefore, many workers with valid FLSA claims—the nurse who was underpaid $1,500, the laborer underpaid $900—would be unable to "attract competent counsel" to represent them.

*Id*. at 616-617 (quoting *Fisher v. SD Protection Inc*., 948 F.3d 593, 603 (2d Cir. 2020); *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir.2004)). Moreover, "[i]n determining fee awards, courts should not 'become green-eyeshade accountants,' but instead must content themselves with 'rough justice.'" *Monroe v. FTS USA, LLC*, 6th Cir. No. 20-6289/6347, 2021 U.S. App. LEXIS 33235, at *18 (Nov. 8, 2021) (quoting *Rembert*, 986 F.3d at 618, quoting *Carter v. Hickory Healthcare, Inc*., 905 F.3d 963, 970 (6th Cir. 2018)). *See also Smyers v. Ohio Mulch Supply Inc*., 6th Cir. Nos. 21-3008, 21-3009, 2021 U.S. App. LEXIS 19634, at *5-6 (July 1, 2021) (district

court abused its discretion by reducing the parties' agreed-to fees payment calculated under the lodestar method to one-third of the total settlement amount).

In the present case, the efforts of Plaintiffs' Counsel resulted in proposed settlement payments to the Named Plaintiff and Settlement Opt-In Plaintiffs representing a substantial percentage of the potential value of their claims - approximately 91% of the wage damages calculated for the participating Named Plaintiff and Settlement Opt-In Plaintiffs at mediation. The proposed payments to Named Plaintiff and Settlement Opt-In Plaintiffs – set forth in the Individual Payments Allocation Schedule (Ex. 3) – are shared *pro rata* among the Named Plaintiff and Settlement Opt-In Plaintiffs based on tenure. Moreover, the proposed payment to Plaintiffs' Counsel represents a significant reduction from the total fees and costs expended in the prosecution of the Action. The attorneys' fees, and the settlement as a whole, are supported by the Declaration of Plaintiffs' Counsel, attached as Exhibit 4.

Prosecuting complex litigation on a collective class basis is always difficult and time-consuming. The tasks required of Plaintiffs' Counsel in this case included pre-litigation investigation of Plaintiff's claims and the identities of potential corporate defendants; preparation of the Complaint; negotiation and submission of the parties' Rule 26(f) report; as well as investigation and interviewing of current and former delivery drivers of Defendants and putative opt-in class members.

The activities of Plaintiffs' Counsel in this matter were significant. As provided in the attached time records attached to Plaintiffs' Counsel's declaration, in October 2019 Defendant Eckart filed a motion to dismiss for failure to state a claim (ECF #8) which was opposed by Plaintiff (ECF #9), and the Court ultimately denied Defendant's motion (ECF #34). The Court granted the Parties' Joint Motion and Stipulation for Conditional Certification and Notice (*see*

ECF ##15, 15-1) on March 23, 2020, but ordered the parties to provide revisions as to the Notice consistent with the Court's Order (ECF ##16, 17, 17-1, 19.) Notice was mailed to putative class members, and the opt-in period ended forty-five (45) days after the date the Notice and Opt-In Consent Form were mailed. (*See* ECF #15, 15-1.) Plaintiffs' Counsel oversaw the notice mailings to potential opt-in plaintiffs, responded to questions and inquiries from potential opt-in members, as well as drafted Plaintiff's Rule 26 Disclosures.

Plaintiffs' Counsel further drafted Plaintiff's Omnibus First Set of Discovery Requests to Defendants Best Courier, Inc. and Joe Eckart. Counsel further responded to Defendant Best Courier, Inc.'s First Set of Document Requests and First Set of Interrogatories to Plaintiff David Swickheimer, as well as responded to Opt-In Plaintiffs Responses to Defendants' First Set of Combined Discovery Requests Propounded on Opt-In Plaintiffs, which were served on opt-in Plaintiffs, and which required significant time for Counsel to interview, review, verify, and finalize the discovery responses with Plaintiffs. The parties contentiously disputed, but ultimately agreed to, a bifurcated discovery process. (*See* ECF #32.) On November 2, 2020, Plaintiff filed a Motion to Amend the Class Definition in Plaintiff's Complaint Pursuant to Rule 15(a)(2) (ECF #42), which the Court granted on December 2, 2020 (ECF #47). Defendants filed an Answer to Plaintiff's First Amended Complaint, denying all liability under any of Plaintiffs' claims. (ECF #49.)

Moreover, as a result of the discovery and mediation process, Defendants provided Plaintiffs approximately 44,400 pages of PDF documents in addition to spreadsheets containing approximately 386,000 data points. Plaintiffs' counsel both manually and electronically transcribed a statistically significant sample of this data into an electronic format. Plaintiffs' computation permitted a calculation of the unpaid wages for the original opt-in Plaintiffs based

off a sample of approximately 10% or more of the total "Account Register(s)," route and day payment registers, GPS "Activity Log(s)," and job identification/route location spreadsheets for 40% of the original Plaintiffs, and 100% of the records for 60% of the original Plaintiffs (whose tenures were relatively shorter). These documents and data were extensively analyzed by Plaintiffs' counsel for damages, settlement evaluation and mediation, and deposition and discovery preparation purposes.

Defendants ultimately deposed four (4) of the Plaintiffs, including the Named Plaintiff, requiring significant preparation, and Plaintiffs deposed Defendants Best Courier's Fed. R. Civ. P. 30(b)(6) representative. In addition, following the establishment of the opt-in class, Plaintiffs' Counsel interviewed nearly every opt-in Plaintiff and used the obtained information to supplement the damages computation and demand for mediation and post-mediation settlement evaluation purposes, respond to Defendants' comprehensive discovery requests, including interrogatories and production requests that were served upon many of the Plaintiffs, and prepare for examination during deposition and for trial. The analyses, investigation and interviews were time-consuming, but proved instrumental to the negotiation of the proposed Settlement.

The resulting settlement negotiated by Plaintiffs' Counsel ensures substantial payments to the Named Plaintiff and Settlement Opt-In Plaintiffs – approximately 91% of their calculated wage damages at mediation. As of December 8, 2021, at a combined fee lodestar of $129,466.00 the requested attorney fee of $33,991.15 results in a "negative multiplier" of 0.26 ($33,991.15 attorney fee award / $129,466.00 lodestar fee), if the Court approves the requested settlement payment as to attorneys' fees. (*See* Ex. 4 ¶ 44; Ex. 5.) Such a negative multiplier supports that the fee sought is reasonable. *Jones v. Home Care Assistance of Cent. Ohio, LLC*, S.D.Ohio No. 2:18-cv-01342, 2019 U.S. Dist. LEXIS 213145, at *3-4 (Dec. 9, 2019); *Rikos v. P&G*, S.D.Ohio

No. 1:11-cv-226, 2018 U.S. Dist. LEXIS 72722, at *26 (Apr. 30, 2018) (citing *see Walls v. JP Morgan Chase Bank, N.A.*, Case No. 3:11-cv-673-DJH, 2016 U.S. Dist. LEXIS 142325, at * 18 (W.D. Ky. Oct. 13, 2016)). In other words, while Named Plaintiff and Settlement Opt-In Plaintiffs will recover approximately 91% of their calculated wage damages, Plaintiff's counsel has agreed to recover a fraction – approximately 26% – of their lodestar attorney fees incurred to date. The lodestar calculation in this matter unequivocally supports the reasonableness of the fee request.

In addition, the Settlement provides for $1,007.85 in reimbursable out-of-pocket expenses incurred in this case by Plaintiffs' Counsel. These expenses constitute costs that were reasonably necessary to prosecute the action. (*See* Ex. 4 ¶¶ 45-46; Ex. 6.)

Based on all relevant factors, the proposed payment of attorneys' fees and cost reimbursements to Plaintiffs' Counsel is proper and reasonable, and fulfills the purpose and intent of the FLSA's fees provisions.

## V. CONCLUSION

For the reasons addressed above, the parties respectfully request that the Court approve the Settlement by entering the proposed order attached as Exhibit 2.

Respectfully Submitted,

/s/ Ryan A. Winters
Joseph F. Scott (0029780)
Ryan A. Winters (0086917)
Kevin M. McDermott II (0090455)
SCOTT & WINTERS LAW FIRM, LLC
The Caxton Building
812 Huron Rd. E., Suite 490
Cleveland, OH 44115
P: (216) 912-2221   F: (216) 350-6313
jscott@ohiowagelawyers.com

s/ Daniel J. Bennett
Daniel J. Bennett (0079932)
Bennett Law Group, LLC
81 Mill Street, Suite 300
Gahanna, OH 43230
(614) 416-8147
(614) 416-8153
dan@danbennettlaw.com

*Counsel for Defendants*

18

rwinters@ohiowagelawyers.com
kmcdermott@ohiowagelawyers.com

*Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing was filed electronically.

Notice of this filing will be sent by operation of the Court's electronic filing system to all parties

indicated on the electronic filing receipt.

*s/ Ryan A. Winters*
Ryan A. Winters (0086917)